LUIGI TIROCCHI, IND. & AS EX. *et al. vs.* LUCIA TIROCCHI, EX. *et al.*

JUNE 18, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill for the construction of the will of Louisa Tirocchi, which has been certified to this court in accordance with general laws 1938, chapter 545, § 7. The bill was brought originally by Luigi Tirocchi and his living brothers against Lucia Tirocchi, executor, solely. It was here previously in such form and was sent back to the superior court for the addition of necessary parties. See *Tirocchi* v. *Tirocchi*, 66 R. I. 301, 19 A. 2d. 7. These parties, grandchildren of the testatrix, have now been added as parties respondent.

The will consists of seven numbered paragraphs. The first paragraph directs the payment of debts and funeral expenses; the second devises certain real estate to Giovanni Tirocchi, a son of the testatrix; the third, fourth and fifth make specific bequests of $100 each to three grandchildren; the sixth expressly excludes Reverend Father Achille Tirocchi, another son of the testatrix, from any share in her estate; and the seventh contains the disposition which has caused the bringing of this bill for construction.

Paragraph Seventh reads as follows:

> "I give, devise and bequeath to my sons, Luigi Tirocchi, Gerardo Tirocchi, Giuseppe Tirocchi, Augusto Tirocchi, and Giovanni Tirocchi all my property and estate that I may die seized and possessed of, whether

real, personal or mixed, and wherever the same may be located, each to share and share alike. Said property and estate to be used by my said sons, all united in a Partnership, in conducting the business in the Rhode Island Improvement Cement Works and the Rhode Island Laundry, under the following conditions:

"(a)   In order to perpetuate the said property, estate and business, if any of my said sons desire, for any reason, to sever his relation with the said Partnership, he must notify the remaining brothers in writing of his intention to sever his relation with the said Partnership, and then the said brothers, to-wit, my sons, shall have the said property and estate appraised and, after having deducted his proportionate share in the encumbrances and debts of any kind laying in the said property, estate and business, they shall pay to the brother desiring to sever his relation with the said Partnership his proportionate share, provided further that said proportionate share be payable within ten years from the date of appraisal, and that no interest shall be due or payable on said proportionate share within said period of ten years.

"(b)   In the event that any of my sons hereinbefore mentioned has no issue, and he desires to sever his relation with the said Partnership, he shall lose all rights to his said share of the said property, estate and business, and he cannot claim anything from his brothers, to-wit, my sons.   In the event that the said son continues to be united in Partnership with his brothers until his death, then upon his death his said share shall go to and vest in my other sons hereinbefore mentioned, or to their children, if any of them shall have deceased; the purpose of this paragraph being that I desire my property and estate to remain in my own family.

"(c)   In the event that any of my sons hereinbefore mentioned die leaving issue, after having deducted his proportionate share in the encumbrances and debts of any kind laying in the property, estate and business, the widow and children of said son shall be entitled to his proportionate share payable within ten years from the date that an appraisal is made of said property and estate after the death of said son, and interest of four

per cent shall be charged to the remaining sons on the money due the widow and children during said period of ten years.

"(d)  In the event that any of my sons hereinbefore mentioned desire to conduct a separate business of his own during the time he is united in Partnership with his brothers, then he cannot continue to remain in Partnership with his brothers, but if he has issue after having deducted his proportionate share in the encumbrances and debts of any kind laying in the said property, estate and business, he shall be entitled to his proportionate share, provided that said proportionate share shall be payable within ten years from the date of the appraisal of my property and estate and that no interest shall be due or payable on said proportionate share within said period of ten years. If the said son has no issue, he shall lose all rights to his said share of the said property, estate and business, and he cannot claim anything from his brothers, to-wit, my sons.

"(e)  I direct that my sons hereinbefore mentioned united in the said Partnership continue to receive each the same weekly amount of money they used to receive before my death, provided that the said money shall be taken from the proceeds or from the earnings of the business hereinbefore mentioned. In the event that any of my said sons hereinbefore mentioned needs some more money for his personal use, he must notify his brothers, to-wit, my sons, of his need of more money and his brothers shall decide by a majority whether the said money shall be taken from the proceeds or from the earnings of the said business hereinbefore mentioned and shall be given him.

"(f)  I direct that any surplus of money coming from the proceeds and earnings of the business hereinbefore mentioned, be spent for the enlarging and increasing of said business.

"(g)  I direct that the said Partnership of my said sons be lasting until two of my said sons desire to conduct the said business in the Rhode Island Improvement Cement Works and the Rhode Island Laundry."

The five sons therein mentioned were all living and married at the time of their mother's death. Gerardo died September 8, 1939, without issue, leaving surviving him his widow, Lucia Tirocchi, whom he made his executrix and to whom he devised and bequeathed all of his estate. She contends that the seventh paragraph of the will is void for vagueness and inconsistency, and that therefore Louisa Tirocchi died intestate as to all of her property not specifically bequeathed and devised.

The complainants have brought this bill to obtain a construction of the seventh paragraph and answers to two specific questions as follows:

"(1) What disposition shall your complainant, Luigi Tirocchi, as Executor under said will, make of the five (5) one-share certificates of said Rhode Island Laundry Co., Inc. standing in the names of Luigi Tirocchi, Augusto Tirocchi, Giovanni Tirocchi, Giuseppe Tirocchi and Gerardo Tirocchi?

"(2) What disposition shall your complainant, Luigi Tirocchi, as Executor under said will, make of the certificate of stock for ninety-five (95) shares in said Rhode Island Laundry Co., Inc. standing in the name of Louisa Tirocchi?"

Louisa Tirocchi's estate at the time she executed her will consisted principally of unincorporated businesses known as the Rhode Island Improved Cement Works and the Rhode Island Laundry, which were owned by her exclusively. Later in 1931, the year before she died, she incorporated the laundry business under the name of Rhode Island Laundry Co., Inc., with an authorized capital of one hundred shares of stock. Certificates of this stock were issued as follows: ninety-five shares to herself, and one share to each of her five sons, Luigi, Augusto, Giovanni, Giuseppe and Gerardo. The stock certificates of the sons' shares were never delivered by Louisa to any of them and none of the sons ever demanded such certificate.

The complainants contend that the seventh paragraph, if properly read and construed, in the light of the expressed

intention of the testatrix, is not inconsistent with any other paragraph of the will nor is any clause thereof inconsistent with any other, although at first reading some of these clauses might appear to be vague. They contend that, upon careful reading of the seventh paragraph, it becomes clear that the testatrix had a definite plan which is consistent and workable. They further argue that, by virtue of this plan, the rights of Gerardo in their mother's estate passed to them, upon his death without issue, in accordance with the express directions of such plan.

It must be admitted that this plan on first reading appears vague, but, upon further study, we agree with the complainants that this apparent vagueness disappears. This is true also of a seeming inconsistency, in part, between clauses (a) and (b) and between clauses (a) and (d) of the paragraph. However, if we consider all of the clauses together and do not confine our consideration of them strictly to the order in which they are set out in the paragraph, we find a unique but well-thought-out plan by means of which the testatrix provided for the continuance by her sons of the two businesses, which were successfully conducted by her in her lifetime, and for the exclusion from said businesses of any person or persons not of her family, that is, not of her blood.

First and foremost, she gave to her five sons all of her property in equal shares, to be used by them, united in a partnership, for the purpose of conducting the two businesses of the family, Rhode Island Improvement Cement Works and Rhode Island Laundry Co., Inc., both together hereinafter referred to as the business. This gift, however, was subject to certain conditions. These conditions were, substantially, that the business was to be conducted exclusively by said sons; that if any son wished to conduct a separate business, he was required to withdraw from the business; and that if any son without issue so withdrew or died, his proportionate share was to go to his remaining brothers; but that if such a son had issue, then his proportionate share

was to be paid to him or to such issue, and the remaining brothers were to have ten years within which to make such payment.

By clauses (b) and (c) provision was made for such sons as might die while still in the partnership, actively conducting the business. Under clause (b) if such a deceased son left no issue, his rights in the property were to pass to his brothers and their issue. But under clause (c) if he left issue, his widow and children were to receive his proportionate share, which was to be paid to them within ten years after appraisal thereof, and the remaining sons were to be chargeable with four per cent interest on such share until it was paid.

Clause (a) appears to provide that any son who desired to withdraw could do so and receive his share, regardless of whether he was without issue. If we confined ourselves to a reading of this clause alone in order to find the intention of the testatrix, we would be forced to conclude that any son was entitled to his share as thus provided. But such an interpretation would be inconsistent with the dominant intention of the testatrix, gathered from the whole will, for a number of reasons.

In the first place, it would imperil in no slight degree the continued existence of the partnership, which the testatrix expressly planned in the first portion of the seventh paragraph of which (a) is merely a conditional clause. Secondly, it would allow a son, without issue, who withdrew from the partnership, a substantial and unreasonable preference over a son who, though without issue, had remained, in accordance with the strongly expressed desire of the testatrix, in the partnership until his death. Thirdly, it is overridden by the clear unequivocal language of (b), which provides that a son dying without issue loses all his rights, and this is so also of a son who withdraws. Clause (a) ought to be reconciled with such an explicit provision if it can reasonably be done, especially in view of the very clearly and definitely expressed intention of the testatrix

that: "I desire my property and estate to remain in my own family."

For these reasons, we read (a) in connection with the other clauses and construe it as intending to provide generally for the method of payment of the share of any son who retired from the partnership and who was entitled to receive the appraised value of his share. We cannot construe it as declaring that a son was entitled to his proportionate share if he withdrew, because the testatrix has gone to great pains to set out specifically, in the next succeeding clauses, under what conditions a son would or would not be entitled to receive such share.

The first of those conditions is that he must have issue if he withdraws, or leave issue if he dies while a member of the partnership. It is true that the testatrix has adopted a peculiar method to make certain that her property will remain in her family, but we see no legal obstacle to it being given effect.

It is obvious from the provisions of (c) and (f) that the testatrix strongly desired the family business to be continued by her sons and that she was keenly solicitous concerning the future growth of the business. Not only did she provide that the partnership would not be embarrassed by any son suddenly withdrawing and demanding his proportionate share, but she expressly provided that the sons remaining in the partnership should draw only the regular compensation which they were receiving before her death. And finally, with a mind centered on the same purpose, she directed in clause (f) that surplus earnings be ploughed back into the business.

The testatrix further provided that as long as at least three of her sons desired to conduct the business under the plan which she had thus so carefully set forth for its conservation and growth, it should be confined exclusively to members of her own family, meaning and intending thereby her own sons. Three was a majority of the five sons to whom she gave the business and, therefore, it is

not difficult to understand the meaning of the language of the testatrix in clause (g), although she may not have expressed it as clearly as could have been done.

Before we conclude, we must consider a further contention of the respondents. They point out that the seventh paragraph is preceded by six other paragraphs in the will in which the testatrix has bequeathed portions of her real and personal property to others, and yet, by the seventh paragraph she purports to give all her property and estate of every kind to her sons. Respondents contend that this is an insuperable inconsistency which necessarily renders the seventh paragraph void for repugnancy.

The respondents cite, in support of their contention, *Buffington* v. *Work,* 61 R. I. 133. That case involved a repugnant provision which we declared must be held void because of the absolute nature of the estate disposed of in the prior gift. Such is not the situation here. The testatrix has made certain specific bequests and devises of a portion of her property and those gifts are absolute. But there was a great portion of her property not affected by those bequests and devises and this she undertook to devise in the seventh paragraph. Although she did not expressly say so, it is reasonable to infer that when she used the express language she did in that paragraph, she was referring only to *all of her property then remaining* after the prior bequests and devises.

To hold rigidly to the letter of the will and find testatrix's elaborate disposition under the seventh paragraph void, merely because she did not expressly exclude prior disposed of property therefrom, would not be warranted. Rather it is more reasonable and more consistent with the testatrix's intention to give effect to the seventh paragraph, especially since it can be done without doing any harm to the prior gifts. By doing so, we are favoring the clearly expressed intention of the testatrix and are resolving an apparent inconsistency so as to avoid intestacy as to the greater part of her property. "Courts will construe a will so as to avoid

partial intestacy if such construction appears reasonable and natural." *Hammill* v. *Anderson*, 43 R. I. 103, 107, 110 A. 422.

For the reasons above stated, the questions propounded should be answered as follows:

1. The executor is directed to cancel the five shares issued to Luigi, Gerardo, Giuseppe, Augusto and Giovanni Tirocchi, these not having appeared to have ever become the property of said persons but to have remained the property of the testatrix.

2. The executor is further directed to divide all of the stock of Louisa Tirocchi, including the five shares above, into four equal portions and to give one of such portions to each complainant; and he is further directed to stamp or otherwise imprint on the face of each certificate of stock which is issued to each complainant a statement that it is subject to the conditions set forth in the will of said Louisa Tirocchi as herein construed.

On July 7, 1941, the parties may submit to us a form of decree, in accordance with this opinion, for entry in the superior court.

*Charles P. Sisson, Benjamin Cianciarulo, Sisson & Fletcher*, for complainants.

*Francis J. O'Brien, Peter L. Cannon*, for respondents.